EDWIN NEWCOMB v. STATE OF NEBRASKA.

FILED MAY 17, 1935. No. 29427.

*John S. Bishop* and *Frank F. Aplan,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Milton C. Murphy, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

GOSS, C. J.

On July 13, 1925, Edwin Newcomb (called defendant) administered strychnine to his wife, and she soon thereafter died. On July 28, 1925, he was duly charged with murder in the first degree, pleaded guilty to murder in the second degree, and was sentenced by the late Judge Westover to life imprisonment in the penitentiary, where he is still serving that maximum sentence for murder in the second degree.

This proceeding was begun February 6, 1934, by a motion filed in the same district court in which the original proceedings were had, asking the court to set aside and annul the sentence of July 28, 1925, on the following grounds:

(1) The defendant was insane and incapable of pleading, and the court was, therefore, without jurisdiction to sentence him.

(2) There was no investigation of the sanity of the defendant.

(3) There was no investigation by the court before pronouncing sentence in regard to the facts of the case.

The issue on the motion was raised by the state's motion to dismiss on the grounds that the court had no jurisdiction of the subject-matter; that action on the motion was barred by the statute of limitations; that the judgment showed that, when defendant entered his plea and was sentenced, he was represented by a named, able attorney; that the affidavits filed in support of the motion were in-

adequate to sustain it, even if the court had jurisdiction; and that the defendant is guilty of laches.

Before passing on the motion, the court heard the matter on the motion, considering nine affidavits offered by defendant, ten affidavits offered by the state, and the testimony of Alden C. Plantz, produced by the state, who was appointed by Judge Westover and represented defendant at the time of his plea and sentence. Upon a consideration of the evidence, the trial court overruled the motion of defendant, and he came to this court on proceedings in error, asking that the sentence of July 28, 1925, be declared null and void, that the plea of guilty be quashed, and for such "further and different relief as justice may require." While there are eight assignments of error, they are comprehended within the two points that the judgment is contrary to the law and the evidence.

The affidavit of William T. Fenton, then warden of the state penitentiary, shows that when Sheriff Bruce brought Newcomb to the penitentiary he observed and talked with Newcomb a short time, and, being convinced he was demented, asked why the man was brought there instead of to the asylum. To this the sheriff answered that he was carrying out the order committing the prisoner. The warden ordered the prisoner to the hospital to be examined by the prison physician who had charge. Soon thereafter the penitentiary medical board duly certified that the defendant was insane, and he was removed to the Lincoln state hospital for the insane, all in conformity with section 83-750, Comp. St. 1929. The affidavit of D. G. Kavanaugh, then deputy warden, is to the same general effect. It further states that Newcomb was kept at the state hospital until September, 1930, when he was discharged and returned to the penitentiary to continue serving his life sentence. The affidavit of Newcomb states that in September, 1930, he was discharged from the state hospital and returned as cured, and since then has been in his right mind and permanently cured.

The record fairly shows that the patient was insane at and from the time of his incarceration for a period of

about five years. After the first three and a half years he began to show marked improvement. In September, 1930, Dr. D. G. Griffiths, superintendent of the Lincoln state hospital, under authority of section 83-751, Comp. St. 1929, duly certified that Newcomb was restored to sanity, and he was returned to the penitentiary.

In their affidavits, Dr. Griffiths, superintendent, and Dr. R. H. Spradling, assistant superintendent of the Lincoln state hospital, express the opinion that Newcomb was insane when he poisoned his wife. Dr. Samuel E. Overmass, a physician at Gordon, Nebraska, was called to attend Newcomb on July 13, 1925, and Dr. Quincy Elmore, a physician of the same town, was called to attend Newcomb on the same day. Both swear that he was then insane to the extent that he did not know right from wrong.

Alden C. Plantz, who was appointed to represent Newcomb, had served on the insanity board about ten years, and thus had experience with insane persons. He had two conversations with Newcomb and thought he was sane. If he had thought him insane he would have presented that as a plea to the court.

The state introduced affidavits of several witnesses who knew defendant and saw him on the day he was arrested. They are of the opinion he was sane. In rebuttal Dr. William H. Crawford, by affidavit, states that he was called to the jail twice in July, 1925, to attend the prisoner. He was of the opinion Newcomb was suffering from a mental psychosis, and questioned whether it was permanent or self-limited.

It is elementary that one is presumed to intend the natural and probable consequences of his acts, and therefore is presumed to be sane until the issue of his sanity is raised. In this case it was never raised on the trial, nor until years after the court had lost jurisdiction over defendant because the defendant had been undergoing the sentence imposed by the court. No motion for a new trial was ever filed; no proceedings in error were attempted.

Ordinarily, in a criminal action, the only method to secure a new trial is by motion filed at the same term and

within three days after the verdict. No statute has in any way been violated, except it is claimed that the court violated section 29-2027, Comp. St. 1929, by not examining witnesses in open court to determine the degree of crime, upon receiving defendant's confession. We find no evidence in the record supporting that statement, and besides, in the absence of proceedings in error carried on within the statutory time after final judgment, we could not find that the omission, if existing, was prejudicial.

As a matter of fact, there was, and defendant knows there was, no error committed by the trial court that can be reviewed here by any ordinary statutory methods. And what defendant here seeks is a recognition and application of the writ of error *coram nobis,* so that he may hereby obtain a remedy and try out, as if in the original case, a question of fact—that of his then insane condition.

That the writ of error *coram nobis* exists under the Nebraska Constitution and laws has been demonstrated in the recently adopted opinion in *Carlsen v. State,* p. 84, *post,* written by Judge Day. We adopt the argument of that opinion showing that the writ exists, and will be used, in a cause to which it applies, without needlessly repeating or abstracting the argument here. Our duty is to determine and decide whether the writ is applicable to the instant case.

There is no statute of limitations under the Criminal Code of Procedure under which plaintiff in error might bring this action so late as it was begun. But, while he seeks an adjudication of the fact that he was insane at the time he pleaded guilty in a criminal action, the procedure to adjudicate his right to another trial, a trial of that fact and not of any error of law, is essentially a civil action. Though he raised the question by motion, which was proper, it is in all essentials the same as a petition in equity for an opportunity to establish in another criminal trial a fact which he was incapable, by reason of insanity at the time, from producing when he pleaded guilty. His application was heard by a judge sitting in equity. It is a civil proceeding, and, so far as this particular proceeding

is concerned, is governed by the Civil Code as to the statute of limitations.

Section 20-2001, Comp. St. 1929, gives a district court power to vacate or modify its judgments after the term at which they were rendered: "Fifth. For erroneous proceedings against an infant or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings." Section 20-2008, Comp. St. 1929, provides that proceedings to vacate or modify a judgment or order for the cause mentioned in subdivision five of section 20-2001 "must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant or person of unsound mind, and then within two years after removal of such disability."

It is conceded that Newcomb's disability was removed in September, 1930. This proceeding to vacate his sentence was February 6, 1934. No excuse for his laches appears. The proceeding was therefore barred by the statute of limitations.

The judgment of the district court is

AFFIRMED.